684 P.2d 268

Melessa JOHNSON, Individually for herself and as an heir to the Estate of her deceased husband, James L. Johnson, also as personal representative for the Estate of James L. Johnson, Melessa Johnson, as guardian and mother of Christopher Johnson, natural child of Melessa Johnson and the deceased James L. Johnson, Melessa Johnson, as guardian and mother of Kevin Johnson, natural child of Melessa Johnson and the deceased James L. Johnson, Christopher Johnson and Kevin Johnson, individually for themselves, as children of the deceased James L. Johnson and heirs to his Estate, Plaintiff-appellants,

v.

SUNSHINE MINING CO., INC., a Delaware corporation doing business within the State of Idaho, Defendant-respondent.

No. 14786.

Supreme Court of Idaho.

June 14, 1984.

Nick Chenoweth, Orofino, Steven H. Sackmann, Othello, Wash., for plaintiffs-appellants.

James P. Keane and Charles L.A. Cox, of Brown, Keane, Boyd & Gibler, Kellogg, for defendant-respondent.

BAKES, Justice.

This case presents questions of the applicability and the constitutionality of I.C. § 36–1604 which grants a limitation on a landowner's liability to gratuitous recreational users of his property. Summary judgment was granted to defendant Sunshine Mining Company on the record which consists of the pleadings and affidavits. Viewed most favorably to the plaintiffs, the record in this case presents the following facts.

In 1946–47, Sunshine Mining Company constructed a built-up dike near the border of a section of its property, known as a "stull yard." The yard is used for timber preparation and a staging area to the mine. The purpose of the dike was to control flooding of the nearby Big Creek, although a portion of a fork in the dike, in the northwest corner of the stull yard, was once used for unloading logging trucks. This portion of the dike had not been used by Sunshine since the early 1960's. Several affiants testified of playing and riding motorcycles in the stull yard and on the dike from 1962 to 1980. According to the affidavits, Sunshine's employees were aware of the recreational use of Sunshine's property and did not ask the affiants to leave. On one occasion in 1972 an employee of Sunshine told one affiant that he could play and ride a motorcycle in the stull yard.[1] Sunshine never received any consideration for the recreational use of the stull yard.

In the fall of 1979, Sunshine excavated some of the fill material from the portion of the dike on the fork which had once been used for unloading logging trucks. The fill material contained sufficient mineralization to merit mixing and processing it with other ore. The excavation process was halted in the winter and was not resumed in the spring of 1980 because of a strike by Sunshine's employees. The excavation left a

---

1. Plaintiffs offered other affidavits for the purpose of showing consent on other occasions. However, these affidavits were not based on "personal knowledge" as required by I.R.C.P. 56(e). Rather, they were based on what the affiant "had been told" by parties other than Sunshine. *See also Tristate National Bank v. Western Gateway Storage Co.,* 92 Idaho 543, 447 P.2d 409 (1968).

ravine in the dike approximately fifteen feet deep and twenty-five feet to the other side.

On May 26, 1980, James Johnson was visited by a friend sporting a new three-wheel cycle. Johnson, riding his own motorcycle, accompanied the friend in trying out the new cycle. The two entered the stull yard on the north side, rode along the dike, and turned onto the fork of the dike heading toward the excavation. Johnson had previously ridden this route several times. Johnson was in the lead, traveling twenty to thirty miles per hour. Some brush and a slight rise in the dike obscured the view of the ravine until approximately eight to ten feet from the edge. Johnson fell into the ravine with his motorcycle, receiving injuries which caused his death several months later.

Johnson's estate and heirs, plaintiff appellants, sued Sunshine for wrongful death. The district court granted summary judgment to Sunshine, ruling that I.C. § 36-1604 was constitutional, and based upon it there was no duty of care on the part of Sunshine either to warn of or refrain from creating a dangerous condition on its property. On appeal, Johnsons argue that I.C. § 36-1604 is inapplicable to the facts, and further that it is unconstitutional.

■ Appellants first argue that I.C. § 36-1604 does not apply to these facts. The statute provides in part:

**36-1604. Limitation of liability of landowner.—** . . .

. . . .

(c) Owner Exempt from Warning. An owner of land owes no duty of care to keep the premises safe for entry by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes."

There is no dispute that the dike is "land" or that Sunshine is the "owner" within the statute's definitions. Appellants contend that motorcycling is not within the definition of "recreational purposes" as it was defined at the time of the accident:

**36-1604. Limitation of liability of landowner.—** . . .

"(b) Definitions. As used in this section:

. . . .

"3. 'Recreational Purposes' includes, but is not limited to, any of the following or any combination thereof: Hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archeological, scenic, or scientific sites, when done without charge of the owner."

The statutory language employed by the legislature, *i.e.,* "includes, but is not limited to," makes it quite clear that the list was not intended to be exhaustive. Motorcycling for pleasure is sufficiently similar to the activities listed to be included. The uncontradicted affidavit of Johnson's companion states, "On the date of James Johnson's accident, May 26, 1980, Mr. Johnson and I were *pleasure riding our cycles for recreational purposes only* . . . . Neither Mr. Johnson or I paid any consideration to anyone for the right to ride our cycles . . . ." We conclude that Johnson's activities were "recreational purposes" within the meaning of the statute.

■ Appellants next argue that the statute is ambiguous, and that it should be construed as applying only to "passive" negligence and not "active" negligence, such as Sunshine's act of creating the cut in the dike. We find no ambiguity in the statute, nor any basis for distinguishing between so-called "active" and "passive" negligence. The statute specifically provides that "[a]n owner of land owes no duty of care to keep the premises safe for entry by others for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." The statute, after first stating that the owner owes no duty of care to a person entering for recreational purposes, then refers to both *use* and *activity*, neither of which could exist without the owner taking some affirmative or active steps.

Accordingly, there is no basis for arguing that the statute distinguishes between active or passive conduct.[2]

Appellants next contend that I.C. § 36–1604 violates the equal protection clause of the fourteenth amendment to the United States Constitution and analogous provisions in the Idaho Constitution because it creates two classes of persons, non-paying recreational users of another's land and all other persons using the land of another.[3]

■■■ An equal protection analysis first requires a determination of the standard of review. Idaho recognizes three possible standards of review, (1) "strict scrutiny," (2) "means-focus," and (3) the "rational basis" tests. *E.g. Leliefeld v. Johnson,* 104 Idaho 357, 659 P.2d 111 (1983); *Twin Falls Clinic & Hospital Bldg. Corp. v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982); *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976). The classification in this case is not based on a "suspect" classification such as race or religion, nor does it involve a "fundamental right" which is expressly guaranteed or within the penumbra of the Constitution, *i.e.,* freedom of speech, freedom of religion, freedom of movement, right to privacy, etc. Accordingly, the "strict scrutiny" standard is inapplicable.[4]

The "means-focus" test is applicable only if

"the discriminatory character of a challenged statutory classification is apparent on its face and where there is also a patent indication of a lack of relationship between the classification and the declared purpose of the statute ...." *Leliefeld v. Johnson,* 104 Idaho at 373, 659 P.2d at 127.

There is no patent indication of a lack of relationship between the classification and the declared purpose. Therefore, the means-focus test is inapplicable. *Leliefeld v. Johnson, supra.*

The appropriate test to review a statute such as this is the rational basis test, which requires only that the statute "advances

---

**2.** The only case cited to us which makes a distinction between "active" and "passive" negligence involved a common law action for negligence brought by a licensee. *See LePoidevin v. Wilson,* 111 Wis.2d 116, 330 N.W.2d 555 (1983). Even if we assume that Johnson had implied consent to enter the land, I.C. § 36–1604(d)(2) provides that the legal status of "licensee" is not thereby conferred upon him.

"**36–1604. Limitation of liability of landowner.—**... 

....

"(d) Owner Assumes No Liability. An owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

....

"(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed."

**3.** We will discuss the constitutional claim, even though it is questionable whether holding the statute to be unconstitutional would change the result in this case in view of our recent similar motorcycle case of *Huyck v. Hecla Mining Co.,* 101 Idaho 299, 612 P.2d 142 (1980). In *Huyck,* the plaintiff, who was traveling on a private mining road which he had traveled on many times before on his motorcycle, was injured when he failed to see a cable and reflector which had been stretched across the private road by the owner. His failure to observe the cable was allegedly due to a slight rise in the road. This Court affirmed a summary judgment granted by the trial court stating that Huyck was a trespasser to whom a landowner owed no duty other than to "refrain from willful or wanton acts which might cause injuries." *Huyck v. Hecla Mining Co., supra* at 301, 612 P.2d 142.

**4.** Art. 1, § 18, of the Idaho Constitution which states, "[A] speedy remedy [shall be] afforded for every injury of person, property or character," does not guarantee the common law rights which were in effect at the time the Constitution was adopted, as "fundamental rights." To hold otherwise

"would be to hold that the common law as of 1890 governs the health, welfare and safety of the citizens of this state and is unalterable without constitutional amendment. Nothing in Art. 1, § 18, either explicitly or implicitly prohibits legislative modification of common law actions. Art. 1, § 18, contains no reference whatsoever to the common law. The only adoption of the common law in this jurisdiction is found in Art. XXI, § 2, of the state constitution and I.C. § 73–116. Those provisions clearly contemplate the inherent power of the legislature to modify the common law with few exceptions. *See, State v. McCoy,* 94 Idaho 236, 486 P.2d 247 (1971) (*dictum*)." *Jones v. State Board of Medicine,* 97 Idaho at 864, 555 P.2d at 404.

legitimate legislative goals in a rational fashion." *Leliefeld v. Johnson,* 104 Idaho at 374, 659 P.2d at 128. The encouragement of recreation enhances the physical well-being of Idaho's people, has a positive effect on Idaho's economy, and is a legitimate legislative goal. The legislature has stated in I.C. § 36–1604(a) that "the purpose of this section is to encourage owners of land to make private land and water areas available to the public without charge for recreational purposes by limiting their liability toward persons entering thereon for such purposes." It is rational for the legislature to conclude that a limit on the landowner's liability exposure to non-paying recreational users has an influence on that landowner's decision not to exclude recreational users from his land. Subsection (d) of the statute invites that result by providing that:

> "36–1604. **Limitation of liability of landowner.**—...
>
> . . . .
>
> "(d) Owner Assumes No liability. An owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:
> "1. Extend any assurance that the premises are safe for any purpose.
> "2. Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owned.
> "3. Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons."

■ The recent opinion of the United States Supreme Court in *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), provides the current expression of the rational basis test. That case involved the question of whether Minnesota's statute prohibiting the sale of milk in plastic containers violated the equal protection clause of the fourteenth amendment. Justice Brennan, writing for a nearly unanimous court, stated:

> "But States are not required to convince the courts of the correctness of their legislative judgments. Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.' . . . .
>
> "Although parties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational, [citing cases] they cannot prevail so long as 'it is evident from all the considerations presented to [the legislature], and those of which we may take judicial notice, that the question is at least debatable.' *Id.,* at 154, 58 S.Ct., at 784. Where there was evidence before the legislature reasonably supporting the classification, litigants may not procure invalidation of the legislation merely by tendering evidence in court that the legislature was mistaken." 449 U.S. at 464, 101 S.Ct. at 724.[5]

Applying this recent expression of the rational basis standard, we cannot say that the stated legislative determination that the limitation of liability will "encourage owners of land to make private land and water areas available to the public without charge for recreational purposes," is an irrational legislative judgment. Accordingly, the statute survives the rational basis test.

■ Finally, appellant argues that "by granting immunity without regard to intent, I.C. § 36–1604 is arbitrary and unreasonable and denies appellants their federal and state constitutional guarantees of due process of law." Appellants assert that, of the forty states which have similar recreational use statutes, all but Idaho and Ohio exclude from the immunity granted by the

---

**5.** At oral argument it was suggested that the "reasonable" or "rational" element of the rational basis test might require that the rationality of the legislative decision be "fair and substantial," because of the decision in *Packard v. Joint* *School Dist. No. 171,* 104 Idaho 604, 661 P.2d 770 (Ct.App.1983). However, the fair and substantial requirement is an element of the "means-focus" test, not the rational basis test.

statute conduct by the landowner which reflects an intent to injure the trespasser. That was the common law rule in Idaho prior to the enactment of I.C. § 36–1604. *Huyck v. Hecla Mining Co.*, 101 Idaho 299, 612 P.2d 142 (1980) ("the duty of the defendants, as owners or tenants, was to refrain from willful or wanton acts which might cause injuries [to a trespasser].''). However, we need not decide whether the Idaho statute exempts acts of a landowner which reflect an intent to injure a trespasser, as argued by appellants, and whether a lack of such an exemption in the statute would be an unconstitutional violation of due process. The activities of the defendant in excavating the ore from the dike for processing in its smelter does not rise to that level. *Huyck v. Hecla Mining Co., supra.* Accordingly, we take no position at this time on the issue of whether or not I.C. § 36–1604 would absolve a landowner of liability for willful or wanton injury to a trespasser. On the facts of this case, I.C. § 36–1604 advances legitimate legislative goals in a rational fashion and is therefore constitutional.

Affirmed. Costs to respondents.

DONALDSON, C.J., and McFADDEN, J. pro tem., concur.

HUNTLEY, Justice, dissenting.

This is a question of first impression as to the effect and constitutional validity of I.C. § 36–1604. I believe the trial court erred in granting respondent Sunshine Mining Company's motion for summary judgment.

The trial court assumed that I.C. § 36–1604 merely codifies the common law with regard to the duty owed by landowners and occupants to trespassers and therefore concluded that the statute does not exempt from liability landowners whose intentional acts or omissions injure another. The lower court declared that the only exception to the immunity provided for in the statute would be an intentional tortious act upon the part of the landowner or occupier. The trial court observed that the affidavits

presented would not support a finding of intent to injure.

There are two problems with the trial court's reasoning process. First, the statute does not provide for any type of limited immunity. The immunity it grants is absolute. Secondly, the trial court failed to address the issue of whether Sunshine's conduct, if not intentional, was arguably willful and wanton as alleged in the complaint.

The clear language of the statute does not support the lower court's assertion that it is, in most part, a codification of the principles of common law relied upon in *Huyck v. Hecla Mining Company,* 101 Idaho 299, 612 P.2d 142 (1980), wherein, this Court stated that the duty of an owner or tenant was to refrain from willful or wanton acts which might injure trespassers. Indeed, it would seem that the statute was intended not to codify the common law but rather to derogate it.

It is a settled canon of interpretation that when language is clear and unambiguous, it must be held to mean what it plainly expresses. *Bastian v. City of Twin Falls,* 104 Idaho 307, 658 P.2d 978 (1983 Court of Appeals); *Knight v. Employment Security Agency,* 88 Idaho 262, 398 P.2d 643 (1965); *Petersen v. State,* 87 Idaho 361, 393 P.2d 585 (1964). I do not consider the language of I.C. § 36–1604 to be ambiguous in any respect. The statute plainly provides:

**36–1604. Limitation of liability of landowner.**—...

. . . .

(c) Owner Exempt from Warning. An owner of land owes *no* duty of care to keep the premises safe for entry by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes. (Emphasis added).

Of the forty states having recreational use statutes, only Idaho and Ohio have attempted to grant absolute, unconditional immunity to landowners for injuries sustained by recreational users. Only one

case has construed the scope of the immunity granted landowners under such statutes. In *Plastic Surgery Associates v. Ratchford*, 454 N.E.2d 567, 7 Ohio App.3d 110, the Ohio Court of Appeals held that, since under statute, (R.C. § 1533.181(A)(1)) an owner of premises owes no duty to a recreational user to keep the premises safe for entry or use, an action could not be brought against the owner by a recreational user for alleged wanton misconduct. The Court stated, "There can be no wanton misconduct unless one breaches a duty which he owes to another. Since the statute expressly provides that there is no duty, there cannot be wanton misconduct." *Id.* at 567.[1] By similarly granting immunity without regard to intent, I.C. § 36–1604 is arbitrary and unreasonable and denies appellants, the wife and children of the decedent, their federal and state constitutional guarantees of due process of law.

A due process challenge will be successful when (1) there is a preliminary showing that the interest is a cognizable property interest and (2) that the legislation challenged does not bear a rational relationship to the preservation and promotion of the public welfare. *Jones v. State Board of Medicine*, 97 Idaho 859, 555 P.2d 199 (1976); *Barry v. Koehler*, 84 Idaho 170, 369 P.2d 1010 (1961). An action founded upon a wrongful death claim is a recognized property interest.

The state and federal due process boundaries defining the scope of a legitimate exercise of police power have been drawn as follows:

The legislature, under the broad field of "police power", may enact laws concerning the health, welfare and morals of the people. This authority, resting with the legislature, is not subject to question by the courts, except to determine whether such authority has been exercised in an arbitrary or unreasonable manner, and whether it actually accomplishes some real purpose. *Barry* at 177, 369 P.2d 1010.

The legislation clearly had a viable objective—to open recreational lands to the public. However, its wording is so broad as to preclude it from passing constitutional muster. Under I.C. § 36–1604, no matter how inconsistent the use, condition, structure or activity is with recreational use, the owner is still free from liability. By not excluding from immunity intentional, willful or wanton conduct, the legislature has licensed an owner to create unsafe conditions which are totally inconsistent with recreational use. By failing to limit the immunity in this fashion, the legislature has elevated the promotion of recreational use over life itself. It is simply not rational to say that the demands of recreation are so pressing as to rise superior to a proper regard for the safety of human life. Hence, the enactment of I.C. § 36–1604 was not a proper exercise of the state's police power. This Court cannot save the statute by straining for a constitutional interpretation. Only the legislature has the power to amend or correct it. *Herndon v. West*, 87 Idaho 335, 393 P.2d 35 (1964).[2]

Moreover, the statute offends public policy.[3] The burden to a landowner/occupier to warn of a known, newly created, con-

---

1. Compare I.C. § 36–1604 with Wash.Rev.Code § 4.24.210 (1976), the Recreation Use Act for the state of Washington, which preserves owner liability in only three situations: When the entrant is charged a "fee of any kind," when he is injured by an intentional act, and when he sustains injuries "by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted."

2. Notably, decisions from jurisdictions allowing liability for intentional misconduct, have demanded only a minimal duty of care, often requiring only that a sign be posted warning of the unobservable or latent danger. *See Odar v. Chase Manhattan Bank*, 138 N.J.Super. 464, 351 A.2d 389 (1976); cf. *Heider v. Michigan Sugar Co.*, 375 Mich. 490, 134 N.W.2d 637 (1965); *McGruder v. Georgia Power Co.*, 126 Ga.App. 562, 191 S.E.2d 305 (1972), rev'd subnom. *Georgia Power Co. v. McGruder*, 229 Ga. 811, 194 S.E.2d 440 (1972); *Washington v. Trend Mills, Inc.*, 121 Ga.App. 659, 175 S.E.2d 111 (1970).

3. *See* Knowles, Wiliam C., *"Landowner's Liability Toward Recreational Users: A Critical Comment,"* 18 Idaho L. Review 59 (Winter 1980).

cealed, dangerous, man-made condition in an area of known recreational use is minimal when compared to the burden that the victim or his family face if the landowner is given a cloak of immunity and recovery is denied. It is absurd to immunize a landowner from civil liability when reckless, wanton or willful conduct which is harmful to human life may result in criminal prosecution.

Assuming, arguendo, that the statute is constitutional and merely codifies the common law, I would point out that the trial court did not address the issue of whether Sunshine's conduct, although unintentional as to the specific injurious result, was nonetheless willful and wanton. Sufficient allegations and affidavits were presented to raise the issue and its resolution is the province of the fact-finder. The Johnsons' complaint alleges that the willful, knowing, active, intentional, negligent creation of a trap, hazard or unsafe condition was a breach of the duty to warn, in light of the known presence of recreational trespassers. The Johnsons acknowledge that Sunshine did not act with malice or with the intent to injure, but aver nonetheless that the excavation of a road known to have widespread recreational use manifested a conscious indifference for the safety of others so as to constitute wanton and willful conduct. The majority, however, states "We need not decide whether the Idaho statute exempts 'willful or wanton' acts by a landowner against a trespasser, and whether a lack of exemption in the statute would be an unconstitutional violation of due process. The activities of the defendant in excavating the ore from the dike for processing in its smelter do not rise to the level of willful or wanton conduct toward recreational users of the land. *Huyck v. Hecla Mining Co., supra.*" (page 273). The majority's reliance on *Huyck* is misplaced. In *Huyck*, the Court held that a motorcyclist, who collided with a cable stretched across a private road providing access to a mine, was a trespasser and not an invitee to whom the property owner owed only a duty to refrain from willful or wanton acts that might cause

injuries. To conclude that because the landowner's conduct in *Huyck* was not willful or wanton Sunshine Mining Company's conduct in this case was not willful or wanton makes little sense. The cases are factually distinct. Whether an act is "willful or wanton" depends on the particular circumstances of each case, and one of the factors distinguishing a willful and wanton act is such absence of care for the person of another as exhibits a conscious indifference to consequences. *Dossett v. Anderson*, 41 N.E.2d 313, 314 Ill.App. 376 (1942). Whether an injury is a result of "willful and wanton" conduct is a question of fact for the jury to determine from all the evidence. *Trennert v. Coe*, 124 N.E.3d 79, 83, 4 Ill.App.2d 166 (1955).

In the civil law the words "willful and wanton" mean more than ordinary negligence. *Lancaster v. State*, 64 S.E.2d 902, 911, 83 Ga.App. 746 (1951). "Wantoness" is the doing of some act or omission to do some act with reckless indifference to knowledge that such an act or omission will likely or probably result in injury; it is not intent, but knowledge which is crucial to wantoness. *Gunnells v. Dethrage*, Ala. 366 So.2d 1104, 1106 (Ala.1979). As respects the right of a trespasser to recover for injury on the ground that an act causing injury to the trespasser constituted "willful and wanton conduct", ill-will is not a necessary element of wanton conduct. *McDaniels v. Terminal R. Ass'n of St. Louis*, 23 N.E.2d 785, 791, 302 Ill.App. 332 (1939).

The essential elements of "willful and wanton misconduct" are knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; the omission to use such care and diligence to avert the threat and danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. *Olszewski v. Dibrizio*, 275 N.W. 194, 195, 281 Mich. 423 (1937). The most critical element of wantoness is knowledge, and that element

need not be shown by direct evidence; rather, it may be made to appear by showing circumstances from which the fact of knowledge is a legitimate inference.

Willful acts and omissions are conscious acts and omissions; acts and omissions, the possible consequences of which are considered and weighed and present in the mind. To be also wanton acts and omissions, they must be of such character or done in such manner or under such circumstances as to indicate that a person of ordinary intelligence activated by a normal and natural concern for the welfare and safety of his fellow men who might be affected by them could not be guilty of them unless wholly indifferent to their probable injurious affect or consequences. *Kile v. Kile,* 63 P.2d 753, 756, 178 Okl. 576 (1936).[4]

In light of the pleadings and affidavits in this case, it cannot be said, as a matter of law, that Sunshine's alleged conduct was neither willful nor wanton. This is a material issue of fact.

In summation, I would hold that a landowner or occupier, aware of constant and continued use by recreational trespassers of the landowner's property, owes the minimal duty to warn of latent dangers created at his direction. Because I.C. § 36–1604 does not permit recovery where the landowner's conduct is intentional, willful or wanton, it violates state and federal concepts of due process and is therefore unconstitutional. On that ground, I would reverse.

However, assuming that the statute does not exempt intentional, willful or wanton landowners from liability, I would remand for a determination of whether the pleadings and affidavits were sufficient to raise a material issue of fact, i.e. whether Sunshine's conduct, given the circumstances of this case, was willful and wanton.

BISTLINE, Justice, dissenting separately and concurring in the views of HUNTLEY, Justice.

For reasons, documented in the record, set forth in my dissenting opinion in *Huyck v. Hecla Mining Co.,* 101 Idaho 299, 612 P.2d 142 (1980), I saw the Court's opinion in that case as a clear travesty of justice, perhaps the ultimate. Today the Court's opinion goes one better. In *Huyck* the plaintiff was merely injured; in this case there was a fatality, the needless death of a working man who left surviving him a widow and two minor children.

There is little to gain by again pointing to the fallacies of the *Huyck* decision, but a starting point for criticism of the Court's opinion today is some of the majority language in the *Huyck* decision: "We are cited to no rule of law which requires the owner or possessor of real property to place signs thereon indicating its status as private property." *Huyck,* 101 Idaho at 300, 612 P.2d at 143. While it may be that a statute is not technically a *"rule* of law," it is nevertheless a law. I.C. § 36–1603 specifically provides for "signs legibly printed or painted in the English language warning persons not to trespass thereon" and makes it "a misdemeanor for any person to enter upon said enclosed land ... without the consent of the owner." The forerunner of this act has been on the books since 1915 (I.C. § 36–2502, repealed in 1976 and reenacted as I.C. § 36–1603), having application to enclosed lands and affording land owners protection from the intrusion of hunters and fishermen. Absent the placing of signs, the intruder, though apparently nonetheless a trespasser, was not subject to criminal prosecution. Given consent, of course, he was not a trespasser. With or without consent he was not fair game for the wanton and willful spring-guns and concealed pits. All of this, if we didn't earlier know it, we learned in law school.

Then, in 1965 the legislature, by the passage of S.B. No. 113, enacted what became I.C. § 36–2502, and which, with little

---

**4.** *See* also W.L. Prosser, *Law of Torts* (4th Edi-     tion) (1971) 185–188.

change other than style, continued on as I.C. § 36–1604. In now almost twenty years, no case has reached this Court wherein a land owner has sought to escape liability for his own allegedly wrongful actions on the basis of the statute. Unfortunately, so it will seem to many, the land owner has found the right court, a Court which will construe a statute, which was declared in its statement of purpose as being a *limitation* of liability, to be an outright *immunity* from liability. Not to be confused with the statement of purpose which is part and parcel, in fact a preamble, to I.C. § 36–1604, is the Title [1] of H.B. No. 518, which on enactment became ch. 95 of the 1976 Session Laws. A broad act, recodifying Fish and Game laws, its lengthy title, as applicable to § 36–1604 was: "PROVIDING FOR RECREATIONAL TRESPASS AND LIMITING LANDHOLDER LIABILITY."

**36–2503. Limitation of liability of landowner.**—1. The purpose of this act is to encourage owners of land to make private land and water areas available to the public without charge for recreational purposes by limiting their liability toward persons entering thereon, for such purposes.

2. As used in this act:

(a) "Land" means private land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.

(b) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

(c) "Recreational purpose" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites, when done without charge of the owner.

3. An owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

4. An owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(a) Extend any assurance that the premises are safe for any purpose.

(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(c) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

5. Unless otherwise agreed in writing, the provisions of this act shall be deemed applicable to the duties and liability of an owner of land leased to the state or any subdivision thereof for recreational purposes.

6. Nothing in this act shall be construed to:

(a) Create a duty of care or ground of liability for injury to persons or property.

(b) Relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this act to exercise care in his use of such land and in his activities thereon, or from legal consequences of failure to employ such care.

(c) Apply to any person or persons who for compensation permits the land to be used for recreational purposes.

7. Any person using the land of another for recreational purposes, with or without permission shall be liable for any damages to property, livestock or crops which he may incur while on said property. [I.C., § 36–2503, as added by 1965, ch. 275, § 1, p. 715.]

Compiler's notes. The words "this act" would seem to be limited to this section. ►Section 2 of S.L.1965, ch. 275, reads. "The provisions of this act are severable. If any section, subsection, sentence, clause or provision of this act is held invalid, the remainder of the act shall not be affected."

Comp. leg. Cal. Deering's Codes, Civil Code, ᘒ 846. Mich.Comp.Laws 1948, ᘒ 300–201. Minn.Stat.1961, §§ 87.01–87.05. Nev.Rev.Stat., ᘒ 41.510.

N.H.Rev.Stat.1955, ᘒ 212:-34. N.J.Rev.Stat.Ann. ᘒ 2A:-42A-1. N.Y. McKinney's Consol. Laws, Conservation Law, ᘒ 370. N.Car.Gen.Stat., §§ 113-120.5—113-120.7. Ohio. Page's Rev.Code, §§ 1533.18, 1533.18.1. Ore.Rev.Stat., ᘒ 30-790. Pa.Purdon's Stat., tit. 12, ᘒ 1629. Tenn.Code Ann., §§ 51-801—51-805. Va.Code 1950, ᘒ 8-654.2. Wis.Stat.1963, ᘒ 29.68.

**36–1604. Limitation of liability of landowner.**—(a) Statement of Purpose. The purpose of this section is to encourage owners of land to make private land and water areas available to the public without charge for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

(b) Definitions. As used in this section:

1. "Land" means private land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.

2. "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

3. "Recreational purposes" includes, but is not limited to, any of the following or any combination thereof: Hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archeological, scenic, or scientific sites, when done without charge of the owner.

(c) Owner Exempt from Warning. An owner of land owes no duty of care to keep the premises safe for entry by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

(d) Owner Assumes No Liability. An owner of land who either directly or indirectly invites or

1. Art. 3, § 16 of the Idaho Constitution provides:

"**Unity of subject and title.**—Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

permits without charge any person to use such property for recreational purposes does not thereby:

1. Extend any assurance that the premises are safe for any purpose.

2. Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

3. Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

(e) Provisions Apply to Leased Public Land. Unless otherwise agreed in writing, the provisions of this section shall be deemed applicable to the duties and liability of an owner of land leased to the state or any subdivision thereof for recreational purposes.

(f) Owner Not Required to Keep Land Safe. Nothing in this section shall be construed to:

1. Create a duty of care or ground of liability for injury to persons or property.

2. Relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this section to exercise care in his use of such land and in his activities thereon, or from legal consequences or failure to employ such care.

3. Apply to any person or persons who for compensation permits the land to be used for recreational purposes.

(g) User Liable for Damages. Any person using the land of another for recreational purposes, with or without permission, shall be liable for any damage to property, livestock or crops which he may cause while on said property. [I.C., § 36–1604, as added by 1976, ch. 95, § 2, p. 315.]

Comp.leg.Cal.    Deering's
Codes, Civil Code, ¶ 846.

---

It has been said that this provision was aimed at the prevention of fraud and deception and to reasonably notify legislators and people of legislative intent in enacting a law. *Kerner v. Johnson,* 99 Idaho 433, 583 P.2d 360 (1978); *Hammond v. Bingham,* 83 Idaho 314, 362 P.2d 1078 (1961).

Having laid out side by side the 1976 act and the earlier 1965 act, it is inescapable that in 1976 the legislators who voted favorably were doubly deceived—first by the title couched in terms of *limiting* liability, but then also by the statement of purpose likewise couched in terms of *limiting* liability. But that isn't the end, because there is yet a third deception!

I.C. § 36–2503 may have had laudable goals when it became law in 1965, although there is reason to doubt that it should have been enacted as an amendment to the fish and game law, its scope being far broader than to encourage access to hunting and fishing areas. Those legislators who supported the concept in 1965 (including Justice Huntley) and unsuspecting 1976 legislators may be justifiably concerned that in passing I.C. § 36–1604 the legislature was not merely reenacting the 1965 act. Sections 36–2503 and 36–1604 are *not* identical, although at a glance they appear to be so. It will be observed that I have circled four phrases [2] which are found in § 36–

1604 for the first time. Incomplete sentences, these phrases apparently must have been inserted into the reenactment of § 36–2503 into § 36–1604 by someone representing some interest group who thereby sought to expand upon § 36–2503. For certain, the phrase "owner assumes no liability" goes beyond the sentence—found as 4(c) in § 36–2503 and d(1) in § 36–1604— which declares that an owner, having limited liability under the act, "does not thereby assume responsibility for any injury to person or property caused by an act of omission of such persons."

The plain reading of this section does *not* absolve the land owner at all from his own negligence or willful act. Quite the contrary, it absolves him from any liability which might otherwise attach to him by reason of his having allowed the use of his liable therefore, the injured party cannot in turn also pass that liability off to the land owner. In that manner it is similar and compatible with § 36–2503(7) and its counterpart § 36–1604(g). Without further belaboring the point, it should be abundantly clear that the 1976 legislature was deceived, whether intentionally or unintentionally being of no moment, when it enacted § 36–1604 into law—a plain violation of the Idaho Constitution, and, being a "substantial, plain, clear and unmistakable" vio-

---

**2.** Also circled in § 36–1604 is the word "cause" which in § 36–2503 was "incur." This has to do only with, respectively "g" and "7" in the two

acts—wherein the drafters continued to impose liability on recreational trespassers for *their* actions.

lation "warrants the nullification" of the statute. Bakes, J., writing for a unanimous Court in *Kerner v. Johnson, supra,* at 452, 583 P.2d at 379.

By far, in my view, the worst of § 36-1604 is the language which grants respite from liability to the owner who "either directly or indirectly invites or permits" the use of his property for recreational purposes. Before delving into this proposition, however, it is essential to observe that defendant's answer to the complaint did not plead I.C. § 36-1604. Instead, in apparent reliance upon *Huyck,* it merely alleged as an affirmative defense that defendant's negligence, if any, is less than the negligence of the decedent, and that decedent was a trespasser on property owned by the defendant to whom was owed no duty since he was trespassing. Affirmative Defenses II, III and IV, R., p. 20. The defendant's motion for summary judgment was its first pleading claiming immunity under § 36-1604, a defense which was not pleaded in *Huyck.* Knowledge of that statute may not have been known to the plaintiffs, but it must be candidly observed that the complaint alleged both a recreational use of the roadway in question at the time of the tragedy, and prior thereto, and the defendant's knowledge that the "roadway was in constant use by motorcyclists and other recreational users ...."

With that predicate I mention a strong concern as to the constitutionality of language which does not place upon an owner an obligation to directly, and in some positive manner, signify that his lands are open for recreational purposes. It is readily foreseeable that, in many cases, whether the land owner had or had not elected to come under the act will be an after-the-fact determination. On that basis it is grossly unfair to the recreational user who, after his recreational trespass, may then be informed that he was guilty of a misdemeanor under § 36-1603 for nonconsensual trespass, or was a permitted trespasser under § 36-1604, depending on what has occurred, and at the owner's election. This is an intolerable state of uncertainty, and hence suggestive of being so vague and

indefinite as to be unconstitutional. A trespasser is entitled to know *beforehand* whether he is being regarded as a criminal trespasser or a recreational trespasser. Putting that problem aside for another day, I express my amazement that the views of Justice Huntley have failed to command a majority of the Court.

There is no language in § 36-1604 which can properly be said to absolve the defendant from its liability, should a jury so find, in having *created* the dangerous situation which caused the injuries and resultant death of the plaintiff's decedent. Part (c) of § 36-1604 speaks in terms of no duty to keep the premises safe, or no duty to warn of a dangerous condition. As in the used vehicle world, it is not difficult to accept taking the use of someone else's premises on an "as is," warrantless basis. Other than with problems already discussed, the concept of not having to grade a roadway, remove snow, or patrol for snags which have fallen across a roadway, present no difficulty. But, to say that there is within § 36-1604 language which is properly there and which immunizes the owner for his own acts which create a previously non-existent hazard, is beyond my ken. The district court wrote that "There is no contention made here, nor would the facts support any inference, that the defendant's excavation was an intentional act to cause injury to the deceased or other trespassers." To my mind, that view, while undoubtedly correct, missed the whole point. It is not whether the defendant intended to injure or kill someone by cutting the roadway with a trench, but whether it was foreseeable that taking out part of the roadway, without erecting either barrier or warning, would result in injury to some person. *That* is the law of tort.

It would seem, too, that if one accepts, *arguendo,* the validity of an implied acceptance by a land owner of I.C. § 36-1604, that is, a land owner who "indirectly invites" by not locking out recreational trespassers, in this particular case, the allowed continued use of the roadway for recreational purposes abruptly was "indirectly

terminated" when the defendant's bulldozer ripped a part of that roadway out. If some action can "indirectly" amount to an invitation, conversely other action can amount to a withdrawal. At the time that the plaintiffs' decedent fell into the ditch the indirect invitation had been withdrawn. I can think of no clearer way to tell the public that they are not free to make recreational use out of a road than by tearing out a piece of it, or maiming one or two people by putting an invisible small cable across it.

In closing, I simply cannot believe that there could be found anyone in the state of Idaho who would equate the non-responsibility to warn of an existing danger with the danger that is man-created. It is ridiculous to say that tearing out a section of the roadway was a "use" of the roadway, and equally absurd to say that dozing out is to engage in an activity which is protected by the statute. For certain, it is a far cry from pitching horseshoes or birdwatching. I am put more in mind of a school bus full of children looking for artifacts, or simply picnicking, on the bombing ranges used by the Mountain Home Air Force Base. Any liability? No, says the Idaho Supreme Court, if the owner of the land indirectly or directly invited the young recreational trespassers.