703 P.2d 685

**Brian COREY and Jean Borley, Plaintiffs-Appellants,**

v.

**STATE of Idaho, Defendant-Respondent.**

No. 15613.

Supreme Court of Idaho.

July 10, 1985.

Thomas A. Mitchell, Coeur d'Alene, for plaintiffs-appellants.

Brian K. Julian, Boise, for defendant-respondent.

DONALDSON, Chief Justice.

The facts in this case are undisputed and can be simply stated as follows: On January 2, 1982, at approximately 4:30 p.m. appellant, Brian Corey, was injured while operating a snowmobile in Farragut State Park. The injury occurred when Corey struck a cable which was strung across a path in the park. The State of Idaho had installed the cable and was responsible for its maintenance. The area in which the accident occurred was open for snowmobiling and was not designated as a closed area. Appellant filed this action seeking compensation for his injuries from the

State of Idaho. He alleged that the State was negligent in installing and maintaining the cable. The State moved for summary judgment. The trial judge granted the motion, holding that the State was immune from liability under I.C. § 36–1604. This appeal followed.

Appellants present three issues on appeal. They argue first, that I.C. § 36–1604 is inapplicable under the particular facts of this case. Second, they contend that the State's conduct in this case was "willful" and that the statute does not provide immunity for willful acts. Finally, they assert that if the statute is found applicable in this case, it must necessarily be struck down as an unconstitutional denial of appellants' right to due process of law. We will address each issue in turn.

Appellants first argue that the statute does not apply in this case. I.C. § 36–1604, as amended in 1980, provides in pertinent part:

"**36–1604. Limitation of liability of landowner.**—(a) Statement of Purpose. The purpose of this section is to encourage owners of land to make land and water areas available to the public without charge for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

"(b) Definitions. As used in this section:

"1. 'Land' means private or public land, roads, trails, water, watercourses, private or public ways and buildings, structures, and machinery or equipment when attached to or used on the realty.

"2. 'Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

"3. 'Recreational Purposes' includes, but is not limited to, any of the following or any combination thereof: Hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, animal riding, motorcycling, snowmobiling, recreational vehicles, winter sports, and viewing or enjoying historical, archeological, scenic, or scientific sites, when done without charge of the owner.

"(c) Owner Exempt from Warning. An owner of land owes no duty of care to keep the premises safe for entry by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

"(d) Owner Assumes No Liability. An owner of land or equipment who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

"1. Extend any assurance that the premises are safe for any purpose.

"2. Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

"3. Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons."

The stated purpose of the statute is to encourage landowners to open their land to the public for recreational use. In the present case, appellants contend that the State—by erecting a steel cable across the trail, was attempting to exclude the public from its land. Thus, appellants assert that the statute does not apply.

Appellants' argument is unpersuasive. I.C. § 36–1604 specifically provides that an owner of land who permits recreational use of that land without charge does not owe a duty of care to keep the premises safe for such use. The State of Idaho is an "owner" as defined by the statute. Farragut State Park is "public land" open for recreational use. It is uncontroverted that at the time of the accident appellant Corey was in an area of the park open for snowmobiling. Additionally, Corey was engaged in snowmobiling, a recreational activity specifically mentioned in the statute. Thus, there can be no question that I.C. § 36–1604 is expressly applicable to the factual situation presented by this case.

Appellants next argue that I.C. § 36–1604 should be interpreted to exclude intentional or willful conduct on the part of the landowner. However, the issue of whether the statute would absolve a landowner from liability for such conduct is not before us. The only allegation of fault contained in appellants' complaint is that, "The State of Idaho installed and maintained said cable negligently and failed to warn of its presence." Appellants neither alleged nor does the record contain any evidence of intentional or willful conduct by the State. Thus, we take no position on the issue of whether I.C. § 36–1604 would absolve a landowner of liability for willful or intentional conduct. *See Johnson v. Sunshine Min. Co., Inc.*, 106 Idaho 866, 871, 684 P.2d 268, 273 (1984).

Finally, appellants assert that I.C. § 36–1604 is unconstitutional as violative of due process because it purports to immunize a landowner from liability for intentional conduct. As we stated above, the question of whether the statute exempts intentional acts by a landowner is not properly before us. Accordingly, the question of whether the statute would be unconstitutional without such an exemption is not before us either.

In *Johnson*, appellants argued that I.C. § 36–1604 violated the equal protection clause of the United States Constitution and analogous provisions in the Idaho Constitution because it created two classes of persons, non-paying recreational users of another's land and all other persons using the land of another. This Court upheld the statute under the rational basis test noting that, "The encouragement of recreation enhances the physical well-being of Idaho's people, has a positive effect on Idaho's economy, and is a legitimate legislative goal." *Johnson, supra*, at 870, 684 P.2d at 272. The applicable standard of analysis under a due process challenge is the same as under an equal protection challenge. *See Heese v. A & T Trucking*, 102 Idaho 598, 635 P.2d 962 (1981). Under the facts of this case, I.C. § 36–1604 advances legitimate legislative goals in a rational

fashion and is therefore constitutional. As was noted above, we take no position on the issue of whether the statute exempts intentional acts of a landowner, and whether the lack of such an exemption would be constitutional.

The decision of the district court is affirmed.

Costs to respondent.

No attorney fees on appeal.

SHEPARD, BAKES and HUNTLEY, JJ., concur.

HUNTLEY, Justice, concurring specially.

I concur in the decision of the majority solely because this case was plead by the plaintiff as a "negligence" case and does not raise the issue of whether the statute is unconstitutional by not excluding from immunity intentional, willful, or wanton conduct. I continue to adhere to the views set forth in my dissent in *Johnson v. Sunshine Mining Co. Inc.*, 106 Idaho 866, 684 P.2d 268 (1984).

BISTLINE, Justice, dissenting.

The complaint alleges that a cable strung across a snowmobile pathway was a trap, and that the State of Idaho installed it, and that the State failed to warn of its presence. The majority opinion read in its entirety so recognizes. Although most would agree that the use of cables and ropes for traffic control in winter sports areas is not uncommon, and hence not *per se* tortious, a proposition with which I would not quarrel, the majority enters into no discussion of the failure to warn. Instead, the majority, immediately after mentioning the failure to warn, comes up with the *non sequitur* that the plaintiffs "neither alleged nor does the record contain any evidence of intentional or willful conduct by the State." To which I respectfully demur. The majority, although flirting around with language from *Johnson v. Sunshine Mining Co.*, 106 Idaho 866, 684 P.2d 269, 276 (1984), avoids any mention of *Huyck v. Hecla Mining Co.*, 101 Idaho 299, 612 P.2d 142 (1980). *Huyck*, of course, of the latter two cases, is the more applicable of the two. Therein a

motorcyclist was picked off by the strung cable. *Huyck* was also the case most strongly relied upon by the State of Idaho. The strung cable in *Huyck* was "a one inch yellow steel cable, from which was hung an aluminum reflector some thirty inches long and three inches in width.... At the time of the accident, the weather was fair and visibility good." *Huyck*, 101 Idaho at 300, 612 P.2d at 143. The hypothesis of this Court's holding was, after citing from *Bosiljevac v. Ready Mix Concrete Co.*, 182 Neb. 199, 153 N.W.2d 864 (1967), that "In the instant case, there is no showing but what the barrier was readily observable." *Huyck*, 101 Idaho at 301, 612 P.2d at 144.[1] Having by sheer hindsight omniscience determined that the fault there was the plaintiff's, the Court did use the occasion to observe that "the duty of the defendants, as owners or tenants, was to refrain from willful or wanton acts which might cause injuries." *Id.*

The trial court likewise made no mention of *Huyck* in summarily ruling against the plaintiffs, but going directly to I.C. § 36–1604, declared that that statute *eliminated any duty* requiring a landowner to conform to a certain standard of conduct.

Both courts, the trial court and now this Court, have simply avoided the proposition that stringing a cable with adequate warning of its presence (*Huyck*) is not a willful or wanton act,[2] but stringing a cable without any warning thereof, *is* a willful and wanton act. As I wrote of the *Johnson* travesty, 106 Idaho at 874, 684 P.2d at 276, there is no language in § 36–1604 which immunizes the owner or possessor of lands for his own acts which create a hazard which was not present when he let open his property for recreational trespass.

Justice Huntley in his *Johnson* dissent ably demonstrated the distinction between *Huyck* and *Johnson*. That distinction, while it failed to sway an unyielding majority in *Johnson*, is unassailable when applied to this case. Justice Huntley wrote:

> To conclude that because the landowner's conduct in *Huyck* was not willful or wanton Sunshine Mining Company's conduct in this case was not willful or wanton makes little sense. The cases are factually distinct. Whether an act is "willful or wanton" depends on the particular circumstances of each case, and one of the factors distinguishing a willful and wanton act is such absence of care for the person of another as exhibits a conscious indifference to consequences. *Dossett v. Anderson*, 41 N.E.2d 313, 314 Ill.App. 376 (1942). Whether an injury is a result of "willful and wanton" conduct is a question of fact for the jury to determine from all the evidence. *Trennert v. Coe*, 124 N.E.3d 79, 83, 4 Ill. App.2d 166 (1955).
>
> In the civil law the words "willful and wanton" mean more than ordinary negligence. *Lancaster v. State*, 64 S.E.2d 902, 911, 83 Ga.App. 746 (1951). "Wantoness" is the doing of some act or omission to do some act with reckless indifference to knowledge that such an act or omission will likely or probably result in injury; it is not intent, but knowledge which is crucial to wantoness. *Gunnells v. Dethrage*, Ala. 366 So.2d 1104, 1106 (Ala.1979). As respects the right of a trespasser to recover for injury on the ground that an act causing injury to the trespasser constituted "willful and wanton conduct", ill-will is not a necessary element of wanton conduct. *McDaniels v. Terminal R. Ass'n of St. Louis*, 23 N.E.2d 785, 791, 302 Ill.App. 332 (1939).
>
> The essential elements of "willful and wanton misconduct" are knowledge of a

---

**1.** My dissent in *Huyck*, after quoting testimony from the record, had a less clear view of the warning than did the majority:

> We therefore have a 7/8 or 1 inch rusty yellow cable stretched across the road, with at most a clear piece of aluminum attached to it. I would not hold on a motion for summary judgment that this is obviously so readily observable that Huyck could not reasonably believe that he was traveling on a public road.

This was not a paved city road and it is for a jury to decide whether or not Huyck was negligent in failing to see the cable.
*Huyck*, 101 Idaho at 304, 612 P.2d at 147.

**2.** Hecla's brief conceded that the duty which the possessor of a premises owes to even a trespasser is "to refrain from wilfully and wantonly injuring him." Hecla's Brief, p. 8.

situation requiring the exercise of ordinary care and diligence to avert injury to another; ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; the omission to use such care and diligence to avert the threat and danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. *Olszewski v. Dibrizio*, 275 N.W. 194, 195, 281 Mich. 423 (1937). The most critical element of wantoness is knowledge, and that element need not be shown by direct evidence; rather, it may be made to appear by showing circumstances from which the fact of knowledge is a legitimate inference.

Willful acts and omissions are conscious acts and omission; acts and omissions, the possible consequences of which are considered and weighed and present in the mind. To be also wanton acts and omissions, they must be of such character or done in such manner or under such circumstances as to indicate that a person of ordinary intelligence activated by a normal and natural concern for the welfare and safety of his fellow men who might be affected by them could not be guilty of them unless wholly indifferent to their probable injurious affect or consequences. *Kile v. Kile*, 63 P.2d 753, 756, 178 Okl. 576 (1936).

In light of the pleadings and affidavits in this case, it cannot be said, as a matter of law, that Sunshine's alleged conduct was neither willful nor wanton. This is a material issue of fact.

> *Johnson, supra*, 106 Idaho at 873–74, 684 P.2d at 275–76 (footnotes omitted).

No one contended in *Johnson* that Sunshine Mining Co. had an intent to hurt or kill anyone. No one contends that the State of Idaho here had an intent to injure or maim. In both cases, however, there was a manifested intent to take action which was taken and was harmful, in fact fatal in *Johnson*. As stated in my *Johnson* dissent:

> The district court wrote that "There is no contention made here, nor would the facts support any inference, that the defendant's excavation was an intentional act to cause injury to the deceased or other trespassers." To my mind, that view, while undoubtedly correct, missed the whole point. It is not whether the defendant intended to injure or kill someone by cutting the roadway with a trench, *but whether it was foreseeable* that taking out part of the roadway, without erecting either a barrier or warning, would result in injury to some person. *That is the law of tort.*
>
> *Johnson, supra*, 106 Idaho at 877, 684 P.2d at 279 (emphasis added; bold original).

The people of Idaho at the least are entitled to the protection of *Posted Notices* in recreation lands that by virtue of unfathomable decisions of this Court the owners or possessors of those recreational areas incur no liability whatever for that which is clearly tortious conduct. Legislation intended for beneficial purposes has been judicially so perverted that it is instead disastrous. Perhaps there will be corrective legislative action on that unfortunate day a legislator or a member of a legislator's family is injured or killed—only to learn from the courts that it is a clear case of *damnum absque injuria.*