729 P.2d 396

**Johanna Joanne McGHEE, through her Guardian, Pamela L. McGHEE, and Pamela L. McGhee, personally, Plaintiffs-Appellants,**

v.

**CITY OF GLENNS FERRY, Idaho, Defendant-Respondent.**

No. 16147.

Supreme Court of Idaho.

Nov. 26, 1986.

David Lee Posey, Payette, for plaintiffs-appellants.

Donald J. Farley and Larry D. Spurgeon of Moffatt, Thomas, Barrett & Blanton, Chartered, Boise, for defendant-respondent.

DONALDSON, Chief Justice.

The facts in this case are undisputed and can be simply stated as follows: On August 16, 1982, appellant, Johanna McGhee was injured when she fell from a swing located at Hull Memorial Park in Glenns Ferry, Idaho. Her mother, Pamela McGhee, brought suit against the city, the owner of the park, based on theories of negligence and strict liability. The district court granted summary judgment to the city and held that the city was immune from liability pursuant to I.C. § 36–1604. This appeal followed.

Summary judgment is appropriate when a review of the evidence in a light most favorable to the non-moving party reveals no genuine issue of material fact, and that the moving party is entitled to prevail as a matter of law. *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982). Since the facts in this case are not disputed, we need only determine whether the district court properly applied I.C. § 36–1604 in granting respondent's motion for summary judgment.

The statute provides limited liability to landowners who gratuitously allow others to use the land, or equipment attached to or used on the land, for recreational purposes. Appellants argue the legislature did not intend the statute to apply to public entities and tht the operation of a city park falls outside the scope of "Recreational Purposes." We disagree.

I.C. § 36–1604 provides in part:

"36–1604. **Limitation of liability of landowner.**—(a) Statement of Purpose. The purpose of this section is to encourage owners of land to make land and water areas available to the public without charge for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

"(b) Definitions. As used in this section:

"1. 'Land' means private or public land, roads, trails, water, watercourses, private or public ways and buildings,

structures, and machinery or equipment when attached to or used on the realty.

"2. 'Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

"3. 'Recreational Purposes' includes, but is not limited to, any of the following or any combination thereof: Hunting, fishing, swimming, boating, camping, picnicing, hiking, pleasure driving, nature study, water skiing, animal riding, motorcycling, snowmobiling, recreational vehicles, winter sports, and viewing or enjoying historical, archeological, scenic, or scientific sites, when done without charge of the owner."

In reviewing statutory language we "will assume the legislature intended what it said in the statute, and we will construe statutory terms according to their plain, obvious and rational meanings." *Hartley v. Miller-Stephan,* 107 Idaho 688, 690, 692 P.2d 332, 334 (1984). Here the statute in (b)1 defines "land" as "private or public land," and in (b)2, it defines "owner" as "the possessor of a fee interest...." Based on the plain meaning of this language we conclude that the city of Glenns Ferry is the "owner" and Hull Memorial Park is "public land" as defined by the statute. Therefore, the statute applies to public entities. This conclusion is supported by *Corey v. State,* 108 Idaho 921, 703 P.2d 685 (1985), where we held the same statute applicable to the state which also owned and operated a park.

Appellants' contention that the operation of a city park is outside the scope of "Recreational Purposes" is mischaracterized. If what they are asserting is that operation of a city park does not fall within the purview of the statute, we have already addressed that issue above. If not, the focus is not on the operation of the park, but whether appellants' use of a park swing is a "Recreational Purpose" within the meaning of the statute. Although the statute lists several activities in the definition of "Recreational Purposes," the statute expressly provides that the list is not exhaustive. Additionally, appellants have not argued that using the park swing is not recreational in nature. Nevertheless, applying the plain and obvious meaning of "Recreational Purpose," it is clear that such activity is recreational and, therefore, we conclude that appellants' activities were within the meaning of the statute.

Accordingly the district court's judgment is affirmed and, respondent's request for attorney fees is denied.

Costs to respondent on appeal.

SHEPARD, and BAKES, JJ., concur.

BISTLINE, Justice, dissenting.

From the record before us we do not know how serious were the injuries suffered by the child, but we do know that by reason of incomprehensibly irrational holdings of the Idaho Supreme Court she has not and will not be allowed to lay her cause before a jury. This sad case takes a place along side of *Johnson v. Sunshine Mining Co.,* 106 Idaho 866, 684 P.2d 268 (1984), where the unremedied travesty occasioned by a 3–2 majority of this Court was the wrongful death of a young husband and father of two young children. The majority in that case conceded that a roadway on top of a Sunshine-constructed dike had been used by local motorcyclists for at least 18 years prior to the fatality, and that "Sunshine's employees were aware of the recreational use of Sunshine's property and did not ask the [motorcyclists] to leave," also that one employee had specifically authorized use of the roadway—all free of charge. *Johnson, supra,* 106 Idaho at 867, 684 P.2d at 269.

Knowing all of this, Sunshine in the spring of 1980 made the motorcycle course more interesting, albeit extremely hazardous, by excavating a section of the dike road so as to leave a gap 25 feet across and 15 feet deep. Mr. Johnson, as with Evel Knievel at Twin Falls, was unable to make the jump. Unlike Evel Knievel, Mr. Johnson was not trying to make any jump at all; he did not know of the excavation over this route which he had previously ridden several times. He went to his de-

mise because of Sunshine's failure to erect any warning whatever. *Id.*

Johnson's wife and children were also thrown out of court without a trial. The district court adhering to an earlier case from this Court, *Huyck v. Hecla Mining Co.*, 101 Idaho 299, 612 P.2d 142 (1980), "granted summary judgment to Sunshine, ruling that I.C. § 36–1604 was constitutional and based upon it there was no duty of care on the part of Sunshine either to warn of *or refrain from creating* a dangerous condition on its property." *Johnson, supra,* 106 Idaho at 868, 684 P.2d at 270. There is, however, no language whatever in § 36–1604 such as that which I have italicized. The majority did recognize paragraph (c) of § 36–1604 and quoted the paragraph in its opinion:

> (c) Owner Exempt from Warning. An owner of land owes no duty of care to keep the premises safe for entry by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

The majority cited and relied upon the *Huyck* case, saying of it, "Huyck was a trespasser to whom a landowner owes no duty other than to 'refrain from willful or wanton acts which might cause injuries.' " *Johnson, supra,* 106 Idaho at 869 n. 4, 684 P.2d at 271. As to Sunshine's conduct in not posting any warning whatever of its having dug a huge gap in the roadway, which was beyond question the cause of Mr. Johnson's death, the 3–2 majority blithely passed over such grossly wanton conduct with the most remarkably irresponsible and irrational *ratio decedendi* that anyone might ever expect to see from any state's highest appellate Court:

> The activities of the defendant in excavating the ore from the dike does not rise to that [*Huyck,* willful or wanton] level. *Id.* at 871, 684 P.2d at 273.

The majority concluded its opinion: "On the facts of this case, I.C. § 36–1604 advances legitimate legislative goals...." *Johnson, supra,* 106 Idaho at 871, 684 P.2d at 273. It is much to be doubted that the legislators who voted for § 36–1604 had in mind a legislative goal of insulating from civil action conduct which responsible citizens would view as amounting to involuntary manslaughter. *See Johnson, supra,* 106 Idaho at 871, 684 P.2d at 273 (dissenting opinion of Huntley, joined by Bistline, J.) ("It is absurd to immunize a landowner from civil liability when reckless, wanton or willful conduct which is harmful to human life may result in criminal prosecution."). Not one person in a thousand sitting as a juror at the *Johnson* trial, had there been one, would have been so callous as the 3–2 majority. Of course, even a child knows that it was not willful or wanton for Sunshine to excavate its own ore. No one disagreed with that—which was not the issue before us. The issue was Sunshine's knowledge of the dike roadway's use, foreseeability of what would happen absent any warning to innocent persons, and a complete failure to warn.

But, why revisit the *Johnson* case? Simply this: It was poorly decided. It was a travesty of justice for which there was no justification, and it is a case that more and more people need to know about. Additionally, to retrace *Johnson* once again starts the flow of adrenalin as another travesty of the same ilk is now in the making in the same Court. Moreover, a just, fair and entirely supportable reason for not denying the injured child in this case her day in court is readily available. First of all, unlike sovereign immunity, as it existed prior to 1971, the purpose of § 36–1604 was not to *immunize* all landowners from tort liability. Rather, its declared purpose was not to *immunize,* but to *limit* liability:

> **36–1604. Limitations of liability of landowner.**—(a) Statement of Purpose. The purpose of this section is to encourage owners of land to make private land and water areas available to the public without charge for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

But, and of even stronger persuasion, is the title of the act, H.B. No. 518, which on

enactment became ch. 95 of the 1976 Session Laws. A broad act, recodifying Fish and Game laws, its lengthy title, as applicable to § 36–1604 was: "PROVIDING FOR RECREATIONAL TRESPASS AND LIMITING LANDHOLDER LIABILITY." Extremely obvious, the purpose of the act was to obtain access to private and public lands for fishing, hunting, and other sports enthusiasts, who are willing to acquiesce in the trespasses of such sporting people, the *quid pro quo* being that forbearance of charging for the use of the property may *limit* the tort liability of the owner.

While the act defined "land," "owner," and "recreational purposes," it did not define trespass, nor need it have done so. "Trespass" is not a word of art the usage of which is peculiar to only the legal profession, but a word of common usage. Similarly with "trespasser"—who is, of course, a person who trespasses. Recourse can be had to any dictionary and to Black's Law Dictionary. Generally, a trespasser is one "who enters on the property of another without any right, lawful authority or an express or implied invitation or license. *Morris v. Atchison, T. & S.F. Ry. Co.* [198 Kan. 147 (1967)], 422 P.2d 920, 927–28." Black's Law Dictionary 1348 (5th ed. 1979).

The drafters of § 36–1604, whoever they may have been, were obviously aware that they were attempting to create a statute which would make of an intruder on lands belonging to others an invitee or permittee, and thus not a trespasser, provided always, of course, that the owner or possessor of the land made no charge.

It is not and never has been the law that a person using a public park, i.e., a park maintained by a municipality, a county, or a state, for the use of the public is within the definition of a trespasser. Maybe there is one justice on the Court who knows of such a principle of law—but he has yet to step forward.

And, as goes without saying, where public parks forever have been just that, parks for public use, those persons using these parks are not trespassers, and accordingly, they are not within the class of recreational trespassers. Recreational users, yes; trespassers, no.

Thus, when those justices who comprise today's majority recite the judicial verity that in reviewing statutory language "we will assume the legislature intended what it said in the statute, and we will construe statutory terms according to their plain, obvious and rational meanings [citation omitted]" they don't *really* mean it. Otherwise, their opinion would mention the small fact that Idaho Code Title 36 is entitled "Fish and Game"; Chapter 16 of this title is headed "Recreational Trespass—Landholder Liability Limited." Presumably these titles are statutory language on a par with the text of the laws.

What would one suppose is the plain, obvious, and rational meaning of a statute so entitled? That it applies to invited users of a municipal park? Hardly. Members of the trial bench and bar will be amazed when they learn of this feat of judicial legerdemain. Municipalities and their insurers will be pleased to learn that this Court has legislated an exception to the Tort Claims Act as yet undreamed of by our legislature—that a governmental entity shall not be liable for injuries to members of the public *who have been and are free to use the playground equipment in a public park.* From where the sun now stands, cities need maintain their park equipment no more forever. Nor waste money buying liability coverage insurance.

The obvious applicable law is Title 6, Chapter 9, "Tort Claims Against Governmental Entities," curiously absent from the majority's analysis. The Court today acts totally outside its authority by, in effect, amending the Tort Claims Act. A truly conservative judiciary would shrink from the specter of such activism. A court dealing in reality would never so extend the particular chapter of the Fish and Game Code.

Another insurmountable problem with the statute as drafted, and making it incapable of just and evenhanded administration, is the failure to require a *before-the-fact* implied or direct invitation. I mention a

strong concern as to the constitutionality of language which does not place upon an owner an obligation to directly, and in some positive manner, signify that his lands are open for recreational purposes. How an owner, especially an absentee owner, can be expected to know that his property is being trespassed upon is beyond my ken. If made aware of his land being used for recreational purposes, whether he would demand a charge, or acquiesce therein, is an unknown. It is readily foreseeable that, in many cases, whether the land owner had or had not elected to come under the act will be an *after-the-fact* determination. On that basis it is grossly unfair to the recreational user who, after his trespass, is then informed that he either owes a fee, or is guilty of a misdemeanor under § 36–1603 for nonconsensual trespass, or informed that he is a permitted recreational trespasser under § 36–1604, *depending on what has occurred, and at the owner's election.* This is an intolerable state of uncertainty, and hence highly suggestive of being so vague and indefinite as to be unconstitutional. A trespasser is entitled to know *beforehand* whether he is being regarded as a criminal trespasser or a recreational trespasser. Putting that problem aside for another day, I express my amazement that the view of Justice Huntley in *Johnson, supra,* failed to command a majority of this Court, and now the sins of *Johnson* are revisited on another innocent victim.

My comment, and lament as well, in *Corey v. State,* 108 Idaho 921, 925, 703 P.2d 685, 689 (1985), bears repeating:

> The people of Idaho at the least are entitled to the protection of Posted Notices in recreation lands that *by virtue of unfathomable decisions of this Court the owners or possessors of those recreational areas incur no liability whatever for that which is clearly tortious conduct.* Legislation intended for beneficial purposes has been judicially so perverted that it is instead disastrous. Perhaps there will be corrective legislative action on that unfortunate day when it is a legislator or a member of a legislator's family who is injured or killed—only to

learn from the courts that it is a clear case of *damnum absque injuria.*

HUNTLEY, J., concurs.