739 P.2d 368

**Rosemary RICE, individually and as natural parent and Guardian Ad Litem for John Rice and Lori Rice, minors, and Lisa Rice, Plaintiffs-Appellants,**

v.

**Lou MINIVER, dba Miniver Communications, dba Taylor Mountain Ski Area, Defendants-Respondents.**

**No. 16117.**

Supreme Court of Idaho.

June 15, 1987.

Racine, Olson, Nye, Cooper & Budge, Chartered, Gary L. Cooper (argued), Pocatello, for appellants.

St. Clair, Hiller, Wood, McGrath, St. Clair & Baker, Marvin M. Smith (argued), Idaho Falls, for respondent Miniver.

Holden, Kidwell, Hahn & Crapo, James D. Holman (argued), Idaho Falls, for respondent Taylor Mountain.

SHEPARD, Chief Justice.

This is an appeal from a summary judgment granted in favor of the defendant-respondent landowner in a wrongful death action wherein the decedent was killed in a motorcycle accident on the defendant's property. We affirm.

Respondent Miniver owns real property known as the Taylor Mountain Ski Area, upon which, during the winter months, there is conducted a commercial recreation-

al skiing enterprise. On payment of a fee the public is invited to utilize the area for recreational downhill skiing.

A road which lies partially in Bonneville County and partially in Bingham County, leads to the Taylor Mountain Ski Area. Although not explicit in the record, we assume that such road is public, at least to the point where it reaches the boundary of the Miniver property. The principal dispute is the status of the continuation of the road from the boundary of Miniver's land into and through the Taylor Mountain Ski Area, until it reaches its termination at the ski lodge. Plaintiffs assert the entire road to its termination at the ski lodge is public, while Miniver asserts that the public road terminates at the boundary of his property, and the dirt road through the area to its termination at the ski lodge is private.

At the point where the road crossed the boundary of Miniver's property and entered the Taylor Mountain Ski Area, a yellow tubular metal barricade had been erected, which blocked the road. Although the barricade effectively blocked the road, it could be circumvented by motorcycles being ridden into the ditch alongside the road, and vehicle tracks indicated such evasion of the barricade. At the barricade and alongside the road for the next 600 feet past the barricade were numerous "stop," "no trespassing" and "no hunting" signs. Approximately 600 feet past the yellow barricade a steel cable was strung across the road. Adjacent to that cable was a stop sign, and the evidence indicated that optic orange streamers were attached to the cable.

During the early fall of 1980 the decedent, John Rice, and two friends, Cushman and Rupe, were riding motorcycles on the road leading to the Taylor Mountain Ski Area. The testimony indicates that when they encountered the tubular metal barricade blocking the road, they skirted the barricade by riding down into the ditch. The testimony of Cushman and Rupe indicates that they knew they were then on private property. It is argued by appellants that those statements refer to the ownership of the ski area as being private, but not an indication that they knew the

road was private. After circumventing the yellow tubular gate by riding into the ditch, the three motorcyclists engaged in a race, with the decedent Rice in the lead, traveling at least 50 miles per hour. Rice struck the steel cable and was instantly killed. The cable was torn from its anchoring posts and wrapped around the torso four times, which led the investigating officer to believe that Rice was traveling at an even higher rate of speed. Also found on or near the body were numerous optic orange streamers.

Appellants assert that, although the Taylor Mountain Ski Area was admittedly the private property of Miniver, and although the road was effectively barricaded at the boundary of Miniver's property, the road was nevertheless public in nature, and therefore the trio of motorcyclists were rightfully on the road and not trespassers. The gravamen of appellants' argument is that both Bonneville and Bingham Counties had performed maintenance on the road in summer and had plowed it in the winter, and therefore the road was public by prescription in conformance with I.C. § 40–103 [repealed and recodified as I.C. § 40–202]. That statute provides:

**Recorded and worked highways.—** Roads laid out and recorded as highways, by order of the board of commissioners, and all roads used as such for a period of five (5) years, provided the latter shall have been worked and kept up at the expense of the public, or located and recorded by order of the board of commissioners, are highways. Whenever any corporation owning a toll bridge, or a turnpike, plant, or common wagon road is dissolved, or discontinues the road or bridge, or has expired by limitation, the bridge or road becomes a highway.

Deposition testimony was taken from various county officials and operators of county road maintenance equipment. That testimony indicates that while there was some maintenance by the county, it was sporadic in nature. Any plowing during the winter was done in return for the privilege accorded by Miniver for the use of the parking lot for county equipment. The tes-

timony indicated that absent such privilege, equipment operators would have had to back their equipment a considerable distance down the road to be able to turn around. That testimony also indicates that after the yellow tubular barricade was erected, the county road crews proceeded no further on the road. The evidence is clear that the road beyond the boundary of Miniver's property had been built privately by Miniver's predecessor in interest. The testimony of the county officials and the equipment operators from both Bonneville and Bingham Counties indicated that the portion of the road beyond the boundary of Miniver's property was considered to be strictly private. There is no evidence indicating any order of the board of county commissioners of either county locating and recording that portion of the road as a public highway.

This Court has held, "... where the public agency expending funds on a roadway expressly recognizes the private character of the road, and does not intend to create or assert any rights greater than those allowed by the owner of the roadway, I.C. § 40–103 does not operate to make the road public." *Cordwell v. Smith,* 105 Idaho 71, 76, 665 P.2d 1081, 1086 (Ct.App. 1983). *See also Cox v. Cox,* 84 Idaho 513, 373 P.2d 929 (1962). It is customary in many counties for county road crews to gratuitously aid private owners in maintenance. *Tomchak v. Walker,* 108 Idaho 446, 700 P.2d 68 (1985); *Cordwell, supra; Cox, supra.* The use and maintenance by a public entity must be something more than occasional or sporadic to change the character of a road from private to public. *Tomchak v. Walker, supra; Kirk v. Schultz,* 63 Idaho 278, 119 P.2d 266 (1941). *See also Pugmire v. Johnson,* 102 Idaho 882, 643 P.2d 832 (1982). Hence, we hold that the only evidence indicates the nature of the road to be private, and that the decedent was a trespasser thereon.

The appellant argues that although the road may have been private, and the decedent may have been a trespasser, nevertheless the decedent was on the property by reason of an implied invitation.

That argument implicates the provisions of I.C. § 36–1604 which provide in pertinent part:

**Limitation of liability of landowner.—** (a) Statement of Purpose. The purpose of this section is to encourage owners of land to make land and water areas available to the public without charge for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

. . . .

(d) Owner Assumes No Liability. An owner of land or equipment who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

1. Extend any assurance that the premises are safe for any purpose.

That argument also implicates the decision of this Court in *Johnson v. Sunshine Mining Co., Inc.,* 106 Idaho 866, 684 P.2d 268 (1984). In the instant case it is clear that the doctrine of implied invitation is inapplicable. No inference of implied invitation can arise in the face of the uncontroverted evidence of the tubular steel barricade placed across the road, and the numerous and clearly visible "no trespassing" signs.

Appellants also argue that the trial court's reliance on *Huyck v. Hecla Mining Co.,* 101 Idaho 299, 612 P.2d 142 (1980), was erroneous. We disagree. Some of the facts of *Huyck* were similar to the instant case in that there a motorcyclist riding on a private road also struck a cable and was injured. In *Huyck* the Court also held that the motorcyclist was a trespasser to whom Hecla owed no duty of care except to refrain from wilfully and wantonly injuring a trespasser, and since the cable across the road was well marked, no duty of care was violated. In *Huyck* the plaintiff argued that he had been lured onto the private road, since at the point where the private road diverged from a public road there were no barricades or signs or other indication that the continuation of the road was private in nature. As before stated, the facts in the instant case are even more compelling than those of *Huyck* due to the

existence of the barricade across the beginning of the private road, and the warning signs.

It is axiomatic that upon motion for summary judgment all facts are to be liberally construed in favor of the party opposing the motion who is also to be given the benefit of all favorable inferences which might be drawn from the facts, and that summary judgment should be granted only when the pleadings, depositions, affidavits and admissions indicate that there is no genuine issue of material fact. I.R.C.P. 56(c). We hold here that no genuine issue of material fact remained for determination.

The orders and decision of the district court are affirmed. Costs to respondent.

DONALDSON, J., and McQUADE and OLIVER, JJ. (Pro Tem), concur.

BISTLINE, Justice, dissenting.

Clearly, there are triable issues of fact and, clearly, the majority opinion is in error in affirming the grant of defendants' motion for summary judgment.

Involved here is a road which takes the traveler to a commercial ski area at the end. The majority, and probably the defendants, too, concede that it is a public road, "at least to the point where it reaches the boundary of the Miniver property." The majority agrees with the defense contention that the road, as it then begins to traverse the Miniver property until the terminus is reached, i.e., the commercial ski area, is private.

Plaintiffs' contention, and obviously a valid one, is that those persons who have used the road over the years are aware only that there is a road, and if you travel it, the commercial ski area awaits you at the end. In other words, a road is a road is a road. Plaintiffs tentatively concede that land bordering on either side of the road may be privately owned.

Our attention has been brought to the fact, as conceded by the majority, that the road, all the way into the commercial ski area, has been maintained by the county. The majority buys the proposition that this was something of a trade—i.e., county gets to park its equipment at the commercial ski area property in turn for working on the road. Such arrangement may be legal in Bingham County, but whether so or not is of no moment. What is important is that any person seeing public county equipment at the end of the road, where the road flows into a commercial ski resort, is justified in concluding that the road is public. That understanding will be fortified where that equipment has been seen in use at improving the road. Whether it has become a public road under the provisions of I.C. § 40–103 is not at all dispositive. If it has, and a jury so finds from the evidence, so much the better for the plaintiffs. If it has not, defendants are not home free if they have contributed to the creation of the appearance of the road being public.

The majority explains the storage of public equipment on the ski area property as a "privilege," one justifiably conferred on the county to make life easier for the county equipment operators. While it may read good to the majority eyes, such has little to do with what people of common perception would conclude as to the road being for private use only or for the use of the traveling public.

The majority, true to its false doctrine in *Huyck,* again in *Johnson,* and lastly in *McGhee v. City of Glenns Ferry,* 111 Idaho 921, 729 P.2d 396 (1986), is quite content to make a *holding* on its own view of the record that the deceased, John Rice, was a trespasser on a private road, and not even a recreational trespasser under the provisions of I.C. 36–1604. The majority turns this argument away, mentioning the *Johnson* case, but not discussing it. Instead, it discusses the *Huyck* case at some length. The majority states: "No inference of implied invitation can arise in the face of the uncontroverted evidence of the tubular steel barricade placed across the road, and the numerous and clearly visible 'no trespassing' signs." Majority op., p. 1071, 739 P.2d p. 370. What the majority points to is the existence of some signs. What also exists, however, is evidence showing extensive use by the public including the previ-

ously mentioned maintenance and a well-worn path circumventing the barricade. In addition, the signs themselves were, due to their placement, off of the road and on the surrounding property, lending credence to a user's interpretation that the signs are placed to deter off-road travel over the private property, but not the now-alleged private road. Where evidence exists not only of use by the public but also some indication that the road was private, then a jury question exists as to whether the road reasonably appeared to be a public road. A jury question also exists as to the adequacy of the warning, and whether Mr. Rice's negligence, if any, was a contributing cause to the fatal accident. Clearly, there were two possible contributing probable causes of the collision—the driver and the wire snare.

Strangely missing from the majority opinion is any mention that the man-killing device which was strung across this roadway *had just been erected.* In that way, the case is on all fours with the *Johnson* case where the man-killing device was a deep trench cut across a roadway which was, as here also, being commonly used by a general public who had no way of knowing that it was not for public use, or that its public use would be suddenly and fatally terminated in a manner which would carry the first message that its public use was discontinued.

The district court concluded that "the record is replete with evidence of the existence of various warnings concerning the nature of the road and the presence of the cable." R., p. 73. Even putting the status of the road aside, the cable's condition itself is still at issue. The condition of the cable could constitute a willful and wanton act as to a trespasser. "Whether an act is willful or wanton depends on the particular

circumstances of each case, and one of the factors distinguishing a willful and wanton act is such absence of care for the person of another as exhibits a conscious indifference to consequences." *Johnson, supra,* (Huntley, J., dissenting), *citing Dossett v. Anderson,* 41 N.E.2d 313, 314 Ill.App. 376 (1942). Conflicting evidence, including the condition of the signs at the cable as well as the number or presence of streamers on the cable, could raise a factual issue as to whether Miniver's conduct was neither willful nor wanton, assuming that the recreational trespass act has any applicability to this case.[1]

Admittedly, in this case, there may have been signs and other apparatus which a jury might have considered as adequate warning. But, we five justices are not a jury.

**1.** The *McGhee* case was a gross misapplication of the Recreational Trespass Act—so gross that it could be categorized as a judicial tragedy. The so-called trespass there was a little girl using a swing in a public park. On almost the same day that this Court's opinion issued, the highest appellate court in New York, in reviewing a plaintiff's judgment for injuries received in a city public park, as in *McGhee,* was 7–0 in its holding that the immunity of the Recreational

Trespass Act to a landowner who does nothing to encourage or discourage recreational trespass "would be superfluous and could serve no purpose, i.e., where the owner, like defendant here, has already encouraged public use and assumed the duty of reasonable care in the operation of its park...." *Ferres v. City of New Rochelle,* 68 N.Y.2d 446, 510 N.Y.S.2d 57, 502 N.E.2d 972 (Ct.App.1986).