778 P.2d 336

Tregg BAUER, a minor, By and Through his parents and legal guardians, Mark BAUER and Mary Bauer, husband and wife, Plaintiffs–Appellants,

v.

MINIDOKA SCHOOL DISTRICT NO. 331 and Minidoka Board of Education, Defendants–Respondents.

No. 17634.

Supreme Court of Idaho.

Aug. 2, 1989.

Jenkins Law Office, Chartered, Idaho Falls, for plaintiffs-appellants. Mr. P. Bruce Palmer argued.

Quane, Smith, Howard & Hull, Twin Falls, for defendants-respondents. Mr. Brian K. Julian of Boise, Idaho, argued.

JOHNSON, Justice.

This is a personal injury case in which summary judgment was granted dismissing the complaint. The first issue presented is whether I.C. § 36–1604 (Supp.1988), Idaho's recreational use statute (the recreational use statute), precludes a claim for ·damages by a public school student who was injured on school property shortly before school commenced. The second issue presented is whether there were genuine issues of material fact concerning a claim that the injury occurred because of negligent supervision by the school district. We reverse the summary judgment as to each of these issues and remand the case to the trial court for further proceedings.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Tregg Bauer (Tregg) suffered a broken leg when he tripped over sprinkler pipes while he was playing football on the grounds of the junior high school he attended. The injury occurred one morning a few minutes before classes commenced. Tregg's parents brought this action on his behalf and for themselves, seeking damages for Tregg's injury. The complaint alleged that Tregg was under the supervision of Minidoka School District No. 331 and the Minidoka Board of Education (the district) and that the district owed him a duty of due care for his safety. The complaint also alleged that the district had breached this duty by (1) storing the sprinkler pipes in the manner it did, (2) failing to warn Tregg of the dangers of the sprinkler pipes, and (3) failing reasonably to maintain the school grounds and to make them safe for Tregg.

The district moved for summary judgment. The motion was supported by an affidavit of the principal of Tregg's school. The affidavit stated that the football game took place before official school hours, that it was not organized or officiated by employees of the district and that the participants provided their own equipment, as well as maintenance, supervision and control of the game. The principal also stated that the school grounds were open for public use and that the students participating in the football game were not charged a fee for the use of the grounds.

Tregg and his mother submitted affidavits in opposition to the motion for summary judgment. In his affidavit Tregg stated that he arrived at school about 8:00 a.m., having walked to school early to play football with classmates prior to the first school bell. He stated that many of his classmates who regularly played football with the group before school rode school buses, which brought them to school by 8:00 a.m. or earlier. He said that the principal and many of the teachers arrived at school early in the morning, knew the students were playing football before the first

bell rang and watched them play nearly every day. Tregg also stated that the principal made it clear to him and his classmates that they were to play on the football field rather than at any other place on the school grounds.

Tregg's mother, who was also a teacher at the junior high school, stated in her affidavit that at least one teacher was always on duty by no later than 8:00 a.m. in front of the school to supervise the arrival of students and their conduct on the school grounds prior to the first school bell. She said that the principal was at school prior to 8:00 a.m. virtually every day and that he personally supervised activities and conduct of students in and around the school prior to the beginning of school. She also stated that the principal had personally observed the football games being played on the football field before school. She said that prior to the date of Tregg's accident the principal had announced to students and faculty over the public address system and through written memos that football was to be played on the football field only and not at any other location on the school grounds.

In granting summary judgment, the trial court concluded that under the recreational use statute the district owed no duty of care to Tregg to store the sprinkler pipes, to warn of the danger caused by the presence of the pipes, to keep the field in a reasonably safe condition or to supervise the pre-school football game. The trial court denied a motion for reconsideration, and this appeal followed.

## II.

### THE RECREATIONAL USE STATUTE DOES NOT APPLY.

Tregg's parents assert that the recreational use statute is not applicable here. We agree.

The pertinent portions of the recreational use statute state:

(a) Statement of Purpose. The purpose of this section is to encourage owners of land to make land and water areas avail-

able to the public without charge for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

(b) Definitions. As used in this section:

1. "Land" means private or public land, roads, trails, water, watercourses, irrigation dams, water control structures, headgates, private or public ways and buildings, structures, and machinery or equipment when attached to or used on the realty.

2. "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

3. "Recreational Purposes" includes, but is not limited to, any of the following or any combination thereof: Hunting, fishing, swimming, boating, rafting, tubing, camping, picnicking, hiking, pleasure driving, nature study, water skiing, animal riding, motorcycling, snowmobiling, recreational vehicles, winter sports, and viewing or enjoying historical, archeological, scenic, or scientific sites, when done without charge of the owner.

(c) Owner Exempt from Warning. An owner of land owes no duty of care to keep the premises safe for entry by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes. Neither the installation of a sign or other form of warning of a dangerous condition, use, structure, or activity, nor any modification made for the purpose of improving the safety of others, nor the failure to maintain or keep in place any sign, other form of warning, or modification made to improve safety, shall create liability on the part of an owner of land where there is no other basis for such liability.

(d) Owner Assumes No Liability. An owner of land or equipment who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

1. Extend any assurance that the premises are safe for any purpose.

2. Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

3. Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.

I.C. § 36–1604(a-d).

▪ This Court has upheld the application of the recreational use statute to injuries occurring on public land. *Corey v. State*, 108 Idaho 921, 703 P.2d 685 (1985); *McGhee v. City of Glenns Ferry*, 111 Idaho 921, 729 P.2d 396 (1986); *Jacobsen v. City of Rathdrum*, 115 Idaho 266, 766 P.2d 736 (1988). However, in none of these cases was the injured party in the relationship to the landowner that Tregg is to the district here. In *Corey* a snowmobile operator was injured in a state park. In both *McGhee* and *Jacobsen*, a child was injured in a city park. Here, Tregg was a public school student participating in a game being played at school as the school day was getting underway. Tregg was not merely a recreational user of the school premises, he was there as a student entitled to the protection of the district. This relationship is crucial to our decision in holding that the recreational use statute does not apply to this case.

As Justice Spear said in dissenting in *Murphy v. Pocatello School District # 25*, 94 Idaho 32, 42, 480 P.2d 878, 888 (1971): "The role of the state to children in school is a parental one often being described as one in *loco parentis*." The relationship of a student to a school district is exemplified by the statutory duty that the board of trustees of a school district has "[t]o protect the morals and health of the pupils." I.C. § 33–512(4) (Supp.1988). In another context this Court has noted that school districts are required to adopt safety rules and regulations concerning the transportation of pupils to school "to impact primarily upon the safety and adequate protection of the pupils." *Quincy v. Joint School Dist. No. 41*, 102 Idaho 764, 766, 640 P.2d 304, 306 (1981). This special relationship that a student has to a school district would be substantially impaired if the recreational

use statute were applied to injuries children suffered while on school premises as students. Students would then bear the risk of defects in school premises.

Tregg was not the type of recreational user contemplated in the recreational use statute. He was a public school student who came to school early before classes began to play football with his classmates. If he had come to the school grounds to play a game of football that was not organized or sanctioned by the school on a day when school was not in session, we would have no trouble in applying the statute to limit the liability of the district. Nor would we have any difficulty in applying the statute, if he had come to the school grounds on a school day to play a game of football that was not organized or sanctioned by the school before the faculty and other students who were not involved in the game began arriving. The problem we have in applying the recreational use statute to these facts is that Tregg arrived to play football at the very time that the school was beginning its operations for the day, although no classes had begun. He was not just a member of "the public" referred to in the recreational use statute. He was there as a student to begin the school day with a game of football. Some students may come early to talk to their teachers, some to visit with their classmates, some to study and others to participate in informal activities such as football. All of these are legitimate activities within the scope of a student's special relationship with the school.

■ It would be entirely artificial to apply the recreational use statute to activities of students up to the moment the first bell rings and classes begin. No purpose would be served by drawing this line for application of the recreational use statute. When the principal is present, some faculty members are on duty and students have arrived, the school day has begun and the recreational use statute has no application to a student who is injured on the school grounds.

## III.

### THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING THE ISSUE OF NEGLIGENT SUPERVISION.

Tregg's parents assert that the trial court should not have granted summary judgment dismissing the claim for damages alleging negligent supervision. We agree. The complaint adequately pleaded a claim for negligent supervision. The affidavits submitted in opposition to the motion for summary judgment raised genuine issues of material fact concerning this claim.

■ The complaint alleged that at the time of his injury Tregg was under the supervision, authority and control of the district and that the district owed him a duty of due care for his safety. The complaint also alleged that the district negligently, carelessly and improperly failed reasonably to warn Tregg of the dangers of the sprinkler pipe on the football field. These were sufficient allegations to entitle Tregg to pursue damages for negligent supervision. As this Court said in *Collord v. Cooley*, 92 Idaho 789, 793, 451 P.2d 535, 539 (1969): "Under the modern form of pleading a complaint need not state the specific legal theories upon which the plaintiff relies. A simple, concise statement of the operative facts is sufficient."

■ The affidavits of Tregg and his mother raised genuine issues of material fact concerning:

1. The knowledge the principal and other members of the faculty of the school had that the football game was being played.
2. The scope of supervision that the school provided for students by at least 8:00 a.m. on school mornings.
3. The degree of supervision the principal had exercised over the football game by directing that the students should play football on the football field and not at any other place on the school grounds.

These issues of fact must be resolved in determining whether the district had a duty

to supervise the students involved in the football game.

In *Albers v. Independent School Dist. No. 302*, 94 Idaho 342, 344, 487 P.2d 936, 938 (1971) this Court noted: "Generally, schools owe a duty to supervise the activities of their students whether they be engaged in curricular activities or non-required but school sponsored extra-curricular activities." There, the Court offered no opinion whether schools must provide supervision where students participate in an informal basketball game in the school gymnasium during the Christmas vacation. However, the Court did cite favorably *Carabba v. Anacortes School Dist. No. 103*, 72 Wash.2d 939, 435 P.2d 936 (1967). In *Carabba* the Washington Supreme Court cited its own decision in *Tardiff v. Shoreline School Dist.*, 68 Wash.2d 164, 170, 411 P.2d 889, 893 (1966) in pointing out that the duty a school district owes to its pupils is "[to] anticipate reasonably foreseeable dangers and to take precautions protecting the children in its custody from such dangers. The child may sue the school district for injuries resulting from its failure to protect the child."

■ If the district had a duty to supervise the students involved in the football game, and if the district should reasonably have foreseen the dangers that existed when Tregg and his classmates played football on the field where the sprinkler pipes were stored, but failed to take precautions to protect him, the district breached its duty to supervise the students there.

## IV.

## CONCLUSION.

The summary judgment granted by the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

Costs are awarded to appellants. No attorney fees were requested.

BAKES, C.J., and BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, J., sat, but did not participate in the opinion due to his untimely death.